IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KEVIN C. BETSKOFF** | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No. 1:25-cv-02306-JMC |
| **SAIA MOTOR FREIGHT LINE, LLC, et al.** | * | |
| | * | |
| *Defendants*. | | |

\* \* \* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

Pro se Plaintiff Kevin Betskoff filed the instant case on July 16, 2025, against Defendants Saia Motor Freight Line, LLC and Pedro V. Trinidad Holguin. (ECF No. 1). The Complaint raises claims of negligence against Defendant Trinidad Holguin ("Count I"), vicarious liability against Defendant Saia Motor Freight Line ("Count II"), and negligence against Defendant Saia Motor Freight Line ("Count III"). (ECF No. 1). Presently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 12). The Motion is fully briefed (ECF Nos. 12, 30, 33), and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth immediately below, Defendants' Motion for Summary Judgment (ECF No. 12) is GRANTED in part and DENIED in part.

**I.     BACKGROUND**

This case arises from a motor vehicle accident that occurred on January 4, 2024 at the intersection between Main Street and 5th Street in McSherrytown, Pennsylvania. (ECF Nos. 1 at 2, 12-7 at 2). Plaintiff is an individual who was driving a 2008 GMC Envoy during the accident. (ECF No. 12-7 at 1). Defendant Tinidad Holguin was driving Defendant SAIA Motor Freight LLC's 2018 Volvo Fleet Truck.  *Id.* Just before the accident, Defendant Trinidad Holguin was

1

traveling westbound on Main Street. *Id.* at 2. An independent third party named Gary Linebaugh would testify he was driving directly behind Defendant Holguin.[1] (ECF No. 12-4 at 1). At the same time, Plaintiff was driving at some distance behind Mr. Linebaugh. (ECF Nos. 12-7 at 2; 12-4 at 1-2). Moreover, an independent third party named Francis Filemyr would testify he was he was inside a nearby store. (ECF No. 30-2).

As Defendant Holguin approached the intersection between Main Street and 5th Street, he slowed to a stop. (ECF Nos. 1 at 3; 12-4 at 1). According to Plaintiff, Defendant Holguin "was stopped in the middle of the street with its four-way flashers on." (ECF No. 1 at 2). By contrast, Defendants, the police report, and Mr. Linebaugh indicate that Defendant Holguin had his left turn signal on when he slowed to a stop. (ECF Nos. 12-4 at 1; 12-5 at 2; 12-7 at 2). Defendants' dashcam footage does not show whether the four-way flashers or left turn signal were on. *See* (ECF No. 12-3). Plaintiff "came up behind the semi-truck heading west on his way toward Gettysburg from Hanover." (ECF No. 1 at 3). He "proceeded to go around the semi like one would do with any other delivery truck stopped in the middle of the street." *Id.* To do so, the dash-cam footage makes clear that Plaintiff crossed over a double yellow line into the oncoming traffic lane headed eastbound and attempted to drive back over the double yellow line into the westbound traffic lane. (ECF No. 12-3).[2] Plaintiff asserts Defendant Holguin "turned left and accelerated and maliciously hit [Plaintiff's] passenger vehicle." (ECF No. 1 at 3). The dashcam footage shows that at the same time Defendant Holguin started to turn left onto 5th Street, Plaintiff came out from behind him in the eastbound lane and attempted to veer back into the westbound lane, at which

---

[1] There is some factual dispute as to when Mr. Linebaugh was driving behind Defendant Holguin. Plaintiff's witness, Mr. Francis Filemyr, signed an affidavit indicating he did not see the accident, but he saw the aftermath when walking out of a nearby store. (ECF No. 30-2). He indicated that when he walked out of the store and the accident already occurred, he watched Mr. Linebaugh "pull up[,] get out of his vehicle[,] and run directly to the cop and talk with him." *Id.*
[2] Defendants' dashcam footage is twelve seconds and on file with the Clerk of the Court.

2

point the two vehicles collided. (ECF No. 12-3). Plaintiff asserts he did not believe Defendant Holguin could have made a lawful left turn at the intersection between Main Street and 5th Street because 5th Street is a "no trucks" street. (ECF No. 30 at 8). Plaintiff's footage of the intersection between Main Street and 5th Street confirms that there is a "no trucks" sign at the corner of the intersection. (ECF No. 31-1).

Upon impact, Plaintiff asserts "the enormous size and weight of the tractor trailer…was earth shattering" and Plaintiff "flipped up in the air and landed on the other side of the street on the sidewalk." *Id.* There exists some argument as to whether Plaintiff's vehicle "flipped up into the air" and landed on the other side of the street on the sidewalk.[3] *See* (ECF No. 12-3). Careful review of the dashcam footage shows the impact to Plaintiff's vehicle caused its weight to shift to the left side and lift the right-side tires off the ground before both vehicles stopped. *Id.* Plaintiff's car veered back over the double-yellow line and eventually stopped on the westbound side of Main Street. (ECF No. 12-3). The chain of events occurred in roughly twelve seconds. *Id.*

Plaintiff asserts claims of negligence, vicarious liability, and negligent hiring, training, or supervision. (ECF No. 1). In response, Defendants filed the present Motion for Summary Judgment. (ECF No. 12). Plaintiff filed his Opposition Motion (ECF No. 30) on October 28, 2025. On November 19, 2025, the Court identified a choice-of-law issue implicated by Plaintiff's

---

[3] Defendants seek attorneys fees and costs pursuant to Fed. R. Civ. P. 11 because "Plaintiff's claims are knowingly false and asserted, or maintained, in bad faith." (ECF No. 12-2 at 7). In their summary judgment memorandum, Defendants point to the allegation that Plaintiff flipped into the air and landed on the other side of the street as one such false assertion. (ECF No. 12-2 at 6-7). The Court recognizes the misleading nature of Plaintiff's phrasing when compared to the dashcam footage, which depicts one or two tires lifted slightly off the ground immediately after impact. Plaintiff indicates in his Response in Opposition to Defendants' Motion for Summary Judgment, "The video does show the right side of my vehicle seriously elevated from the impact and to me as the occupant, it felt like I was in the air…I drafted my Complaint prior to my knowledge a video existed." (ECF No. 30 at 8). At this juncture, the Court trusts Plaintiff's representation. The Court declines to find that he made the assertion in bad faith. There does exist some support for Plaintiff's representation that it felt like he was in the air in the dashcam footage. Moreover, simply because Plaintiff did not drop his claims after Defense counsel recommended that he do so does not mean he has pursued them in bad faith. Therefore, the Court declines to find a Rule 11 violation. *See* Fed. R. Civ. P. 11.

arguments. Accordingly, the Court requested a Reply brief from Defendants on the issue of whether Pennsylvania law governs, and if it does, how does comparative negligence impact Defendants' view of the case. (ECF No. 32). Defendants so replied on November 21, 2025 (ECF No. 33).

## II. STANDARD OF REVIEW

Defendants' motion is styled as a motion for summary judgment under Federal Rule of Civil Procedure 56. (ECF No. 12). Summary judgment "is a device to make possible the prompt disposition of controversies if in essence there is no real dispute as to the salient facts." *Blakely v. Wards*, 738 F.3d 607, 611 (4th Cir. 2013), *as amended* (Oct. 22, 2013). Summary judgment is improper when "the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 246-47 (4th Cir. 2002); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (noting that summary judgment generally requires "adequate time for discovery" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))).

All parties must be given some indication by the Court that it is treating a pleading filed in responce to a complaint as one for summary judgment, "with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). When the moving party styles its responsive motion as a motion for summary judgment, as is the case here, and attaches additional materials to its motion, the non-moving party is considered notified, and the Court may treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

"Ordinarily, summary judgment is inappropriate where the parties have not had an opportunity for reasonable discovery." *Id.*; *see also Sol v. M&T Bank*, No. 8:22-CV-02999-AAQ, 2024 WL 327086, at *4 (D. Md. Jan. 29, 2024) (collecting cases). Under such circumstances, it

4

may be that the filing of such a motion "forces the non-moving party into a fencing match without a sword or a mask." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014). "Generally, if a party believes that summary judgment is procedurally inappropriate because the party needs discovery to properly oppose the motion, the party should file a Rule 56(d) affidavit informing the court of such." *Sol*, 2024 WL 327086, at *4. However, "'[e]ven in the absence of a Rule 56(d) affidavit,' a judge maintains 'complete discretion' to decline to convert a motion to dismiss to one for summary judgment." *Id.* (quoting *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 693 (D. Md. 2017)). Plaintiff has provided notice in his Response that he seeks extensive discovery including the opportunity to review Defendants' GPS data, internal policies, route information, and to take expert depositions. (ECF No. 30 at 6-7).

However, in light of the videos and documents already provided, the Court does not find that accepting Defendant's motion as a motion for summary judgment is premature at this time as to all issues; It cannot be said that Plaintiff is forced into a fencing match without a sword or mask. *McCray*, 741 F.3d at 483. Both parties attached videos, affidavits, and documents to their filings for the Court's consideration. (ECF Nos. 12-3; 12-4; 12-5; 12-6; 12-7; 30-1–13-12; 31-1). The reports contain numerous records, including dashcam footage, video footage of the intersection between Main Street and 5th Street, multiple witness affidavits, map images, and more. At this juncture, Plaintiff has provided reasonable evidence such that a summary judgment standard is proper.

Accordingly, Rule 56 requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd.*

*P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

### III.  ANALYSIS

Defendant points to several inconsistencies between Plaintiff's allegations and the dashcam footage in support of their request for summary judgment. *See* (ECF No. 12-2) ("The undisputed evidence shows that the numerous allegations of Plaintiff's Complaint are completely false and Defendants…are therefore entitled to judgment as a matter of law."). Plaintiff's response addresses a number of the factual issues Defendants raise and specifically argues that (1) Pennsylvania law permits passing a double yellow line to circumvent an object in the road, (2) Defendant Trinidad Holguin was negligent because he was making an illegal left turn onto a "no trucks" road, and (3) Plaintiff believed Defendant was stopped because he knew trucks were not supposed to turn left onto 5th Street and thought his hazards were on. (ECF No. 30 at 8-9). In Defendants' Reply, they indicate the "no trucks" sign is irrelevant because Defendant was making a local delivery at the

6

end of 5th Avenue. (ECF No. 33 at 1). Defendants further argue that Pennsylvania "no truck" signs do not prevent a truck from making a local delivery to a destination beyond the sign. *Id.* Accordingly, Defendants argue that "Plaintiff was the sole proximate cause of the accident, but certainly at least 51%, which bars him from recovery either way." *Id.*

### A. Pennsylvania Law Governs Plaintiff's Complaint.

There exists a conflict between Pennsylvania and Maryland law on the issue of negligence. *See Knight v. Avco Corp.*, No. 4:21-CV-00702, 2025 WL 2677533, at *4 (M.D.Pa. Sept. 18, 2025) (discussing the difference between modified comparative negligence and the doctrine of contributory negligence). To be sure, a federal court sitting in diversity applies the choice of law rules of the forum state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Generally speaking, Maryland adheres to the *lex doci delicti* rule in analyzing choice of law problems with respect to causes of action sounding in tort. *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 925 A.2d 636, 648–49 (2007); *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 911 A.2d 841, 844 (2006); *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir.1999). Under the *lex loci delicti* choice of law principle, the substantive rights of the parties "are to be determined by the law of the state in which the alleged tort took place." *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000) (quoting *White v. King*, 223 A.2d 763, 765 (Md. 1966)). "The tort is complete only when the harm takes place, for this is the last event necessary to make the actor liable for the tort." Herbert F. Goodrich, Handbook of the Conflict of Laws § 93, at 263–64 (3d ed. 1949), quoted in *Angeletti*, 752 A.2d at 232. Where the events giving rise to a tort action occur in more than one state, the court must apply "the law of the State where the injury—the last event required to constitute the tort—occurred." *Heffernan*, 925 A.2d at 649; *see also Hood*, 911 A.2d at 845. There exists a public policy exception, which permits the application of Maryland law if

7

application of the law of the state in which the injury occurred violates a "clear, strong, and important Maryland public policy." *Lab. Corp. of Am.*, 911 A.2d at 849 (applying the public policy exception to *lex loci delicti* to tort causes of action). In the personal injury context, this Court has considered policy issues including the parties' ties to Maryland at the time the injury occurred. *Harvard v. Perdue Farms, Inc.*, 403 F. Supp. 2d 462, 466 (D. Md. 2005) (discussing *Hutzell v. Boyer*, 252 Md. 227, 249 A.2d 449 (1969), in which Maryland law applied to a Virginia workmen's compensation dispute because both parties were Maryland residents returning to their Maryland homes).

*Lex loci delicti* requires the application of Pennsylvania law to this tort action. *Heffernan*, 925 A.2d at 649. The accident took place in Pennsylvania. (ECF No. 1 at 2) ("On that day in January, Plaintiff Betskoff was driving to Gettysburg from Hanover by way of PA route 116."). Further, Plaintiff is domiciled in Maryland and owns property in Pennsylvania. (ECF Nos. 1 at 2, 30 at 8). Defendant Trinidad Holguin is a Pennsylvania resident. (ECF No. 1 at 2). Review of the record shows the parties have ties to Pennsylvania, Plaintiff was traveling out of Maryland to Pennsylvania, and the accident occurred miles past the Maryland-Pennsylvania border. (ECF No. 1). There is no public policy reason that compels the Court to apply Maryland law. Thus, Pennsylvania law governs this action. *Heffernan*, 925 A.2d at 649.

> **B.     There Exists a Genuine Issue of Material Fact on the Issue of Comparative Negligence.**

Pennsylvania courts frequently reject invitations to grant summary judgment in motor vehicle accidents in which there exist factual disputes regarding negligence and comparative negligence as a matter of law. *Doland v. Berrios*, Civil No. 1:11-CV-1783, 2015 WL 433598, at *5 (M.D.Pa. 2015); *see also Burke v. TransAm Trucking, Inc.*, 605 F.Supp.2d 647, 649 (M.D.Pa. 2009); *Sonnenberg v. Erie Metro. Transit Auth.*, 586 A.2d 1026, 1027 (1991); *LeGrand v. Lincoln*

8

*Lines, Inc*, 384 A.2d 955, 956 (1978). To prevail on his negligence claim against Defendant Trinidad Holguin, Plaintiff must show (1) a duty that the law recognizes, (2) a failure on the defendant's part to comport to that duty, or a breach of it, (3) a causal connection between the defendant's breach and the resulting injuries and (4) actual loss or damage that the plaintiff suffered. *Alcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1222 (Pa. 2002). With respect to Count II (vicarious liability) against Defendant SAIA Motor Freight Line, Inc., "[u]nder Pennsylvania law, to establish vicarious liability, a plaintiff must show a master-servant relationship existed." *Ciotola v. Star Trans. & Trucking, LLC*, 481 F. Supp. 3d 375, 390 (M.D. Pa. 2020). That much is not in dispute. Accordingly, if there exists a genuine issue of material fact with respect to Defendant Trinidad Holguin's alleged negligence, there exists a genuine issue of material fact with respect to Defendant SAIA Motor Freight Line, Inc.'s liability. *See id.*

Defendants insist that as a matter of law Plaintiff's own conduct was the sole proximate cause of the accident because he crossed the double-yellow line to drive around Defendant Trinidad Holguin. (ECF No. 33 at 1). That could very well be a jury's view of the case. But Plaintiff argues that Defendant Trinidad Holguin had his hazards on and therefore Plaintiff did not act unreasonably by crossing the double-yellow line. (ECF No. 30 at 4). Indeed, 75 Pa. C.S.A. § 3301(a)(2) provides that a driver may cross onto the left-side of the roadway "[w]hen an obstruction exists making it necessary to drive to the left of the center of the roadway, provided the driver yields the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the roadway." 75 Pa. C.S.A. § 3301(a)(2). Moreover, Plaintiff asserts that after years of driving on Main Street, he "had no expectation or belief that a professionally driven commercial tractor trailer would be turning left or right onto 5th Street…[b]ecause no trucks are allowed." (ECF No. 30 at 8). As Defendants correctly point out, 75 Pa. C.S.A. § 4902 provides

"vehicles making local deliveries or pickups may be exempted from restrictions on the use of highways imposed under this subsection." 75 Pa. C.S.A. § 4902.  Accordingly, Defendants argue that Defendant Trinidad Holguin, who was making a delivery on 5th Street, made a lawful turn. (ECF No. 33 at 1).  That may be, and such lawfulness goes to the reasonableness of Defendant Trinidad Holguin's actions.  At the same time, the reasonableness of *Plaintiff's* actions in part rely on the reasonableness of Plaintiff's assumptions about the situation he was likely encountering. Correspondingly, his knowledge that the street in question was a "no trucks" street in part goes to the reasonableness of his judgment that the truck was not turning left.

In the Court's view, whether it was Defendant Trinidad Holguin or Plaintiff who acted unreasonably and caused the accident, at least in part depends on which light signals were active before Plaintiff drove over the double-yellow line. Based on the record before it, there are varying perspectives as to whether Defendant Trinidad Holguin engaged his left turn signal or whether he had his hazards on. While the dashcam video does not show which lights were on before the collision, Plaintiff's video footage immediately after the accident depicts flashing hazard lights. (ECF No. 31-1).  Defendants included an affidavit from Mr. Gary Linebaugh, who would testify he saw "the SAIA tractor-trailer approach[] the intersection with 5th Street" and "slow[] down and initiate[] its left turn signal before coming to a complete stop."  (ECF No. 12-4 at 1).  Plaintiff would testify he saw hazard lights activated, and Defendant Trinidad Holguin and Mr. Linebaugh would testify otherwise. *See* (ECF No. 12-4). Moreover, Plaintiff seeks to impeach Mr. Linebaugh's testimony through that of Mr. Filemyr, who would testify that he saw Mr. Linebaugh arrive well after the accident occurred. (ECF No. 30-2). It may well be the case that Defendant Trinidad-Holguin and Mr. Linebaugh present credible testimony, a jury concludes Defendant Trinidad Holguin had his left blinker on, and subsequently finds in favor of Defendants. However,

based on the facts available for the Court's review, a reasonable jury could reject Mr. Linebaugh's testimony in favor of Plaintiff's and Mr. Filemyr's and conclude that Defendant Trinidad Holguin slowed to a stop with his hazards on. Therefore, in consideration of the existing factual dispute, the Court cannot conclude that Plaintiff's negligence claim fails as a matter of law. *Doland*, 2015 WL 433598, at *5; *see also Burke*, 605 F.Supp.2d at 649. Defendant's Motion for Summary Judgment with respect to Counts I and II is DENIED.

### C.  Even taken in the light most favorable to Plaintiff, Count III fails as a Matter of Law

"Negligent screening, hiring, training, supervision, or retaining holds an employer directly liable for its own negligent failure to protect a plaintiff from an employee that it knows, or has reason to known, is likely to cause injury." *Adams v. U.S. Airways Group, Inc.*, 978 F. Supp. 2d 485, 496 (E.D. Pa. 2013) (citing Restatement (Second) of Torts § 317). The Third Circuit Court of Appeals made clear that such claims are "specifically predicated upon two duties of an employer: the duty to reasonably monitor and control the activities of an employee, and the duty to abstain from hiring an employee and placing that employee in a situation where the employee will harm a third party." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487-88 (3rd Cir. 2013). Importantly, unlike a vicarious liability claim, "[a] claim for negligent supervision provides a remedy for injuries to third parties who would otherwise be foreclosed from recovery under the principal-agent doctrine of respondeat superior because the wrongful acts of employees in these cases are likely to be outside the scope of employment or not in furtherance of the principal's business." *Id.* at 489.

At the same time, where, as here, both vicarious liability and negligent hiring/retention are brought against an employer, both cannot proceed where, as here, SAIA does not dispute[4] Defendant Trinidad Holguin's employment status. In *Holben v. Midwest Emery Freight System, Inc.*, 252 F.Supp. 1224, 1224-25 (W.D.Pa. 1981), the Western District of Pennsylvania clarified that "[n]othing can be gained from it when the defendant employer has admitted the agency of the driver, and to permit the action to proceed on both counts would allow the introduction of evidence of prior accidents of the driver, highly prejudicial, irrelevant and inadmissible in the cause of action based on the imputed negligence of the driver. *Id.* at 1224-25.

It is true that since *Holben*, other Pennsylvania courts have denied summary judgment motions when a punitive damages claim is viable. *E.g.*, *Sterner v. Titus Transp.*, LP, Civ. No. 10-2027, 2013 WL 6506591, at *3-4 (M.D. Pa. Dec. 12, 2013); *see also Fields v. Lebert*, CIVIL ACTION NO. 24-447, 2025 WL 2404247, at *5 (E.D.Pa. Aug. 19, 2025). Therefore, "where in a negligent entrustment case the plaintiff alleges that defendant's action was indifferent to the consequences and claims punitive damages, this becomes an important additional element to his case." *Holben*, 252 F.Supp. at 1225. Thus, the Court first considers the issue of punitive damages.

In Pennsylvania, punitive damages "are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others." *SHV Coal, Inc. v. Cont'l Grain Co.*, 526 Pa. 489, 587 A.2d 702, 705 (Pa.1991). Indeed, punitive damages "are not justified where the defendant's mental state rises to no more than gross negligence." *Id.* To prevail on a punitive damages claim, a plaintiff must prove (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and (2) he acted, or failed to act in conscious disregard of that risk. *See Calhoun v. Van Loon*, No. 3:12–CV–458, 2014 WL

---

[4] Defendants would testify Defendant Trinidad Holguin was acting in the scope of his employment, as he was making a delivery when the accident occurred. *See* (ECF Nos. 12-5 at 2, 4; 33 at 1-2).

3428876, at *2 (M.D.Pa. July 11, 2014). "Pennsylvania cases have adopted a very strict interpretation of reckless indifference to the rights of others" *Burke v. Maassen*, 904 F.2d 178, 181 (3d Cir.1990) (cleaned up). In *Holben v. Midwest Emery Freight System, Inc.*, the plaintiff's punitive damages claim survived summary judgment because there was evidence that the defendant employer "was aware of its employee's driving record, including several accidents, traffic violations, and a discharge by a prior employee because of his accident record while employed by it." *Holben*, 252 F.Supp. at 1225. The court there reasoned that the defendant's evidence of certain investigative hiring efforts "may ultimately be sufficient in the mind of the trier of fact to disprove both the claims of negligent entrustment and reckless indifference, [but] they do not remove these issues from trial." *Id.*

The same cannot be said here. Plaintiff seeks punitive damages, but there exists no evidence showing Defendant SAIA Motor Freight Line, Inc. acted with "such indifference to the consequences as to merit punitive damages." *Id.* After careful review of the Complaint, Plaintiff failed to plead the same. *See generally* (ECF No. 1). Under Pennsylvania's strict interpretation of reckless indifference to the rights of others, it cannot be said that there exists a genuine issue of material fact as to whether Defendant SAIA Motor Freight Line, Inc. acted with reckless indifference when it retained Defendant Trinidad Holguin. To the contrary, Defendants offered evidence that he has a clean driving record and has never been in an accident before. (ECF No. 12-5 at 1). Plaintiff has neither raised allegations in the complaint nor offered evidence to the contrary. *See* (ECF Nos. 1, 30). Therefore, under Pennsylvania's high bar for punitive damages, Defendant's Motion for Summary Judgment is GRANTED with respect to Count III and as to any claim aginast SAIA for punitive damages.

IV.     CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (ECF No. 12) is hereby GRANTED in part and DENIED in part. With respect to Counts I and II, Defendants' Motion for Summary Judgment is DENIED without prejudice. With respect to Count III, Defendants' Motion for Summary Judgment is GRANTED. Defendants are directed to file an answer to Plaintiff's Amended Complaint within fourteen (14) days of the entry of this Order.


Date: November 25, 2025                              /s/
                                            _____
                                            J. Mark Coulson
                                            United States Magistrate Judge